**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| HEIDI LANGAN, on behalf of herself and all others similarly situated,<br><br>       Plaintiff,<br><br>   vs.<br><br>JOHNSON & JOHNSON CONSUMER COMPANIES, INC.,<br><br>       Defendant. | Civil Action No. 3:13-cv-01470-JBA |

**PLAINTIFF'S MEMEORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
<u>**PLAINTIFF'S FIRST AMENDED COMPLAINT**</u>

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     STANDARD OF REVIEW ...................................................................................2

III.    ARGUMENT .........................................................................................................2

        A.      Defendant Engaged in Deceptive Acts or Practices Under CUTPA ......................3

                1.      Defendant's Representations are False or Misleading to a
                        Reasonable Consumer.......................................................................3

                2.      Defendant's Argument That its Misrepresentations Are
                        Not Misleading as a Matter of Law is Without Merit.....................5

        B.      Defendant Engaged in Unfair Acts or Practices Under CUTPA .........................10

                1.      Defendant's Misrepresentations Offend Public Policy .................11

                2.      Defendant's Misrepresentations Are Immoral, Unethical,
                        Oppressive or Unscrupulous..........................................................12

                3.      Defendant's Misrepresentations Are Substantially Injurious to
                        Consumers.......................................................................................12

        C.      Plaintiffs' Claims are Not Preempted By FDA Regulation or Barred By
                the Doctrine of Primary Jurisdiction.................................................................14

                1.      Plaintiffs' State Law Comnsumer Protection Claims
                        Are Not Preempted .........................................................................14

                2.      Plaintiffs' State Law Consumer Protection Claims
                        Are Not Barred By the Doctribe of Primary Jurisdiction ............17

IV.     CONCLUSION....................................................................................................21

i

# TABLE OF AUTHORITIES

## Cases

*Ackerman v. Coca-Cola Co.*,
  No. CV-09-0395(JG)(RML), 2010 WL 2925955 (E.D.N.Y. July 21,
  2010) ................................................................................................. 9, 15, 17-18, 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 2

*Astiana v. Ben & Jerry's Homemade, Inc.*,
  Nos. C 10-4387 PJH, C 10-4937 PJH, 2011 WL 2111796 (N.D. Cal. May 26,
  2011) ................................................................................................................. 16

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
  Nos. C-11-2910 EMC, C-11-3164 EMC, 2012 WL 2990766 (N.D. Cal. July 20,
  2010) ........................................................................................................... 4, 8, 10

*Astiana v. Hain Celestial Grp., Inc.*,
  905 F. Supp. 2d 1013 (N.D. Cal. 2012) .................................................................. 19

*Balser v. Hain Celestial Grp., Inc.*,
  No. CV-13-05604-R, 2013 WL 6673617 (C.D. Cal. Dec. 18, 2013) ...................... 10

*Bates v. Dow Agrosciences LLC*,
  544 U.S. 431 (2005) ............................................................................................... 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. 2

*Bruton v. Gerber Prod. Co.*,
  No. 12-CV-024120LHK, 2013 WL 4833413 (N.D. Cal. Sept. 6, 2013) .................. 7

*Chavez v. Nestle USA, Inc.*,
  511 Fed. Appx. 606 (9th Cir. 2013) .................................................................. 17, 19

*Colucci v. ZonePerfect Nutrition Co.*,
  No. 12-2907-SC, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) ............................ 5

*Coyle v. Hornell Brewing Co.*,
  No. 08-02797(JBS), 2010 WL 2539386 (D.N.J. June 15, 2010) ........................... 20

*Crozier v. Johnson & Johnson Consumer Cos.*,
  901 F. Supp. 2d 494 (D.N.J. 2012) ........................................................................ 16

*Davis v. HSBC Bank Nev., N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ......................................................................13

*In re Epogen & Aranesp Offlabel Marketing & Sales Practices Litig.*,
   590 F. Supp. 2d 1282 (C.D. Cal. 2008) ...............................................15, 16

*Fagan v. Neutrogena Corp.*,
   No. 13-cv-01316-SVW-OP, 2014 WL 92255 (C.D. Cal. Jan. 8, 2014) ......... 2, 4, 9, 15-16, 20

*Fairchild Heights Residents Ass'n, Inc. v. Fairchild Heights, Inc.*,
   310 Conn. 797 (2014) .....................................................................................2

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013)............................................................................9

*In re Frito-Lay N.A. Inc. All Natural Litig.*,
   No. 12-MD-2413 (RRM)(RLM), 2013 WL 4647512 (E.D.N.Y. Aug. 29,
   2013) ...............................................................................................4, 5, 16, 18

*Goya Foods, Inc. v. Tropicana Products, Inc.*,
   846 F.2d 848 (2d Cir. 1988)..........................................................................17

*Hairston v. South Beach Beverage Co.*,
   No. CV-12-1429-JFW (DTBx), 2012 WL 1893818 (C.D. Cal. May 18, 2012).....................7

*Herron v. Best Buy Co.*,
   924 F. Supp. 2d 1161 (E.D. Cal. 2013)..........................................................13

*Herskowitz v. Apple, Inc.*,
   Nos. 12-CV-0213-LHK, 12-CV-03124-LHK, 2013 WL 1615897 (N.D. Cal. Apr.
   15, 2013) .......................................................................................................11

*Hughes v. Ester C. Co.*,
   930 F.Supp.2d 43 (E.D.N.Y. 2013) ................................................................9

*Ivie v. Kraft Foods Global, Inc.*,
   No. C-12-02554-RMW, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013)...................................16

*Jaghory v. N.Y. State Dep't of Educ.*,
   131 F.3d 326 (2d. Cir. 1997)...........................................................................2

*Janney v. Mills*,
   No. C 12-3919 PJH, 2013 WL 1962360 (N.D. Cal. May 10, 2013) .....................................20

*Koenig v. Boulder Brands, Inc.*,
   No. 13-CV-1186(ER), 2014 WL 349706 (S.D.N.Y. Jan. 31, 2014)....................................2, 6

iii

*Lam v. General Mills, Inc.*,
859 F. Supp. 2d 1097 (N.D. Cal. 2012) ...................................................................9

*Larobina v. Wells Fargo Bank . N.A.*,
No. 10-cv-1279, 2912 WL 1032953 (MRK) (D. Conn. March 27, 2012)................................6

*Lockwood v. Conagra Foods, Inc.*,
597 F. Supp. 2d 1028 (N.D. Cal. 2009) ...........................................................16, 20

*Morin v. Tracy, Driscoll & Co. Inc.*,
No. CV030823241S, 2004 WL 1395945 (Conn. Super. May 26, 2004)..................................3

*Parker v. J.M. Smucker Co.*,
No. C13-0690 SC, 2013 WL 4516156 (N.D. Cal. Aug. 23, 2013)....................................4, 19

*Pelayo v. Nestle USA, Inc.*,
No. CV 13-5213-JFW (AJWx), 2013 WL 5764644 (C.D. Cal. Oct. 25, 2013) .....................10

*POM Wonderful LLC v. Coca-Cola Co.*,
679 F.3d 1170 (9th Cir. 2012) ...........................................................................18

*Red v. Kraft Foods, Inc.*,
No. CV 10-1028-GW (AGRx), 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)......................7

*Riegel v. Medtronic*,
552 U.S. 312 (2008)......................................................................................16

*Stokley-Van Camp, Inc. v. Coca-Cola Co.*,
646 F.Supp.2d 510 (S.D.N.Y. 2009)......................................................................8

*Taradejna v. General Mills, Inc.*,
909 F.Supp.2d 1128 (D. Minn. Dec. 10, 2012) ......................................................20

*Torres-Hernandez v. CVT Prepaid Solutions, Inc.*,
No. 08-cv-1057-FLW, 2008 WL 5381227 (D.N.J. Dec. 17, 2008)........................................18

*Ventres v. Goodspeed Airport LLC*,
272 Conn. 105 (2005) ......................................................................................10

*Vicuna v. Alexia Foods, Inc.*,
No. C11-6119PJH, 2012 WL 1497507 (N.D. Cal. Apr. 27, 2012)...........................................4

*Viggiano v. Hansen Natural Corp.*,
No. CV 12-10747 MMM (JCGx), 2013 WL 2005430 (C.D. Cal. 2013) ............................10

*Von Koenig v. Snapple Beverage Corp.*,
713 F. Supp. 2d 1066 (E.D. Cal. 2010)................................................................5, 10

*Watkins v. Vital Pharm., Inc.*,
　No. CV 12-09374 SJO (JCx), 2013 WL 5972174 (C.D. Cal. Nov. 7, 2013) ........................20

*Williams v. Gerber Products Co.*,
　552 F.3d 934 (9th Cir. 2008) ................................................................... 5-6, 9, 10

*Won Kyung Hwang v. Ohso Clean, Inc.*,
　No. C-12-06355 JCS, 2013 WL 1632697 (N.D. Cal. Apr. 16, 2013) ...................5, 15, 18

**Statutes, Regulations and Rules**

21 U.S.C. §§ 352, 362 ("Food, Drug and Cosmetic Act") ......................................................11, 15

Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA") ................................................... *passim*

58 Fed. Reg. 2302-01, 2407 (Jan. 6, 1993) ................................................................................19

**Miscellaneous**

Appellants' Motion to take Judicial Notice, *Astiana v. Hain Celestial Group* (No. 12-cv-17596) (9th Cir. March 22, 2013) ("FDA Letter") .......................................................... 18-19

## I.        INTRODUCTION

Plaintiff Heidi Langan ("Plaintiff"), on behalf of herself and all others similarly situated, respectfully submits this memorandum in opposition to defendant Johnson & Johnson Consumer Companies, Inc.'s ("J&J" or "Defendant") Motion to Dismiss (the "Motion") [Dkt. No. 30] and Memorandum of Law in support thereof ("Def. Mem.") [Dkt. No. 30-1].

Defendant misrepresented that three of its sunscreen products (each available in two different SPF ratings) (the "Products") are comprised entirely of "100% naturally-sourced sunscreen ingredients" and provide "natural protection," when in truth they include synthetic (and harmful) ingredients.  Plaintiffs allege that Defendant's statement that these sunscreen Products are "*100%* naturally sourced" (emphasis added) constitutes a representation to a reasonable consumer that the sunscreen Products consist *only* of "natural" ingredients.  Based on Defendant's misrepresentations, Plaintiff and members of the putative class paid premiums above what the market charges for similar products that do not represent that they are "100% naturally sourced."

Defendant does not deny that the Products contain unnatural synthetic ingredients. Instead, Defendant wrongly argues that, as a matter of law, no reasonable consumer would be misled by its misrepresentations (and thus that Plaintiff has failed to allege a "deceptive act or practice" claim pursuant to the Connecticut Unfair Trade Practices Act ("CUTPA")).  *See* Def. Mem. at 12-17.  Defendant also erroneously argues that the Complaint fails to plead the elements of an "unfair act or practice" claim under CUTPA.  *See* Def. Mem. at 17-20.  Finally, Defendant wrongly argues that, although the FDA has expressly disclaimed any intent to define the word "natural" in the context of cosmetics, this Court should simply allow Defendant to (falsely) represent that the Products are "natural," regardless of whether that representation is false or

1

misleading and with no regard for state consumer protection laws, solely because the FDA regulates some aspects of cosmetics labeling.  *See* Def. Mem. at 4-11.

Plaintiff respectfully submits that Defendant's arguments are uniformly without merit. Notably, a subsidiary of Defendant raised essentially identical arguments in another litigation also involving the false or misleading labeling of a cosmetic product as "natural."  *See Fagan v. Neutrogena Corp.,* No. 13-cv-01316-SVW-OP, 2014 WL 92255 (C.D. Cal. Jan. 8, 2014).  The Court in *Fagan* rejected all of Defendant's arguments and denied the motion to dismiss in its entirety.  *See id.*  This Court should similarly deny Defendant's Motion in full.

## II.     STANDARD OF REVIEW

On a motion to dismiss, the court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir. 1997).  A complaint should be sustained so long as it contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plaintiff only needs to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Koenig v. Boulder Brands, Inc.,* No. 13-CV-1186(ER), 2014 WL 349706, at *6 (S.D.N.Y. Jan. 31, 2014) (citing *Ashcroft*).

## III.    ARGUMENT

CUTPA is "remedial in character and must be liberally construed in favor of those whom the legislature intended to benefit."  *Fairchild Heights Residents Ass'n, Inc. v. Fairchild Heights, Inc.,* 310 Conn. 797, 817 (2014) (citation omitted).  CUTPA "can be violated by conduct that constitutes *either* an 'unfair' trade practice, in violation of the 'cigarette rule,' *or* a 'deceptive'

2

trade practice, to which the 'cigarette rule' does not apply." *Morin v. Tracy, Driscoll & Co. Inc.,* No. CV030823241S, 2004 WL 1395945, at \*4-5 (Conn. Super. May 26, 2004) (emphasis added).  Here, Plaintiff has that Defendant's acts are both deceptive and unfair. *See* ¶31.[1]

### A.   Defendant Engaged in Deceptive Acts or Practices Under CUTPA

#### 1.   Defendant's Representations are False or Misleading to a Reasonable Consumer

Plaintiffs' claim is straightforward.  Defendant falsely or misleadingly represents on the Principal Display Panel ("PDP") of its sunscreen Products that those sunscreens consist entirely of natural ingredients.  Specifically, the PDPs state that the sunscreen Products are "100% naturally sourced" and provide "natural protection."  ¶¶2, 10-16.  But "natural" means "existing in or produced by nature; not artificial."  ¶2 n.1.  Accordingly, Defendant's representations that the Products are "100% naturally sourced" providing "natural protection" are false because the Products (most of which are marketed for the care of babies) include several *un*natural ingredients, including synthetic ingredients linked, *inter alia,* to cancer, immune system toxicity and allergic reactions. ¶¶13, 15, 18.   As a result, Defendant's representations on the Products' PDPs are misleading to a reasonable consumer because a reasonable consumer would understand the PDP to mean that all of the ingredients in the Products are "100% naturally sourced," and would not know that the Products contain *un*natural (much less toxic) ingredients.  Indeed, Plaintiff intends to introduce expert evidence and testimony demonstrating that over 70% of consumers believe that the phrase "100% naturally-sourced sunscreen ingredients" means that a product contains no synthetic ingredients.  ¶12.

---

[1]  Unless otherwise specified, all citations to "¶_" herein are in reference to the Second Amended Class Action Complaint [Dkt. No. 29] (the "Complaint").

3

Courts have routinely sustained the legal viability of similar claims involving products falsely labeled "natural."  For example, one court in this Circuit has denied a motion to dismiss and sustained a claim (similar to Plaintiff's here) that a "natural" representation on a label is misleading to a reasonable consumer when the product contains artificial ingredients.  *See In re Frito-Lay N.A. Inc. All Natural Litig.,* No. 12-MD-2413 (RRM)(RLM), 2013 WL 4647512, at *15 (E.D.N.Y. Aug. 29, 2013) (denying motion to dismiss because "[w]hat a reasonable consumer would believe the term 'natural' to mean on a [product] label cannot be resolved on this motion").  Plaintiff has not found – and Defendant does not cite to – a single case in this Circuit that reaches a contrary conclusion.

Moreover, in *Fagan*, plaintiffs claimed that Neutrogena (a subsidiary of Defendant) misled consumers when, just as here, it labeled sunscreen products that contained synthetic ingredients as "naturally sourced."  *Fagan,* 2014 WL 92255, at *2.  As in this case, Neutrogena argued that no reasonable consumer would be misled by the term "natural."  The court rejected this argument and sustained the claim because the Neutrogena "naturally sourced" misrepresentation could be "misleading to a reasonable consumer" because the sunscreens contained "numerous unnatural synthetic ingredients."  *Id.*

Other courts in California where similar claims have been litigated have almost unanimously sustained the legal viability of such claims.[2]  Accordingly, given Plaintiff's

---

[2]  *See, e.g., Parker v. J.M. Smucker Co.,* No. C13-0690 SC, 2013 WL 4516156, at *6 (N.D. Cal. Aug. 23, 2013) ("reasonable consumer issue cannot be resolved as a matter of law" where "Plaintiff has alleged that a reasonable consumer would read the 'All Natural' label, assume that such a product contains no … chemically altered ingredients, and would then be misled if the product did in fact contain such things"); *Vicuna v. Alexia Foods, Inc.,* No. C11-6119PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) ("Because the question whether a reasonable consumer would likely be deceived by the designation "All Natural" is a factual dispute, the court finds that these claims cannot be resolved at this stage of the litigation"); *Astiana v. Dreyer's Grand Ice Cream, Inc.,* Nos. C-11-2910 EMC, C-11-3164 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2010) (denying motion to dismiss because court "cannot say at this

4

specific, factual allegations that Defendant's "100% naturally sourced" representation is false or misleading (because in truth the Products contains synthetic ingredients), Plaintiff has alleged that Defendant's representations would mislead a reasonable consumer.

### 2. Defendant's Argument That its Misrepresentations Are Not Misleading as a Matter of Law is Without Merit

Defendant's argument that Plaintiff has failed to allege a misrepresentation on the Product labels (Def. Mem. at 12-17) is without merit. Defendant does not deny that it represented on the PDPs that sunscreens are "100% naturally sourced" and provide "natural protection" or that the Products in fact include synthetic, *un*natural ingredients. Rather, Defendant erroneously argues that this Court should conclude, as a matter of law, that no reasonable consumer would understand Defendant's representation to mean that the sunscreen Products contain only natural ingredients. Def. Mem. at 14-17. Defendant further erroneously argues that every reasonable consumer would somehow understand Defendant's representations to mean that only the "active" ingredients in the sunscreen Products are "natural," and that the "inactive" ingredients are synthetic. Def. Mem. at 12-14. Defendant is wrong.

As a preliminary matter, the meaning that a reasonable consumer would ascribe to Defendant's representation, and whether that consumer would be misled, are quintessential factual issues that cannot be resolved on a motion to dismiss. A consumer misrepresentation claim may only be dismissed when *no* reasonable consumer would be misled. *See Frito-Lay,* 2013 WL 4647512, at *15 (determination of whether "no reasonable consumer" would be misled by word "natural" on label generally cannot be determined on motion to dismiss); *Williams v.*

---

juncture that it is implausible" that "a reasonable consumer could interpret "All Natural Flavors" to mean "all natural ingredients"); *Won Kyung Hwang v. Ohso Clean, Inc.,* No. C-12-06355 JCS, 2013 WL 1632697, at *18 (N.D. Cal. Apr. 16, 2013); *Colucci v. ZonePerfect Nutrition Co.,* No. 12-2907-SC, 2012 WL 6737800, at *7-9 (N.D. Cal. Dec. 28, 2012); *Von Koenig v. Snapple Beverage Corp.,* 713 F. Supp. 2d 1066, 1079 (E.D. Cal. 2010).

5

*Gerber Products Co.,* 552 F.3d 934, 939 (9th Cir. 2008) (reversing dismissal where "the statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural" and so district court erred when it held "no reasonable consumer" could be misled); *see also Koenig,* 2014 WL 349706, at \*11 (denying motion to dismiss where product label included contradictory and/or confusing information about fat content "[b]ecause it is unclear to the Court whether, as a matter of law, a reasonable consumer might be confused or misled").  Here, as discussed above, Plaintiff intends to submit expert evidence and testimony demonstrating that over 70% of consumers believe that the phrase "100% naturally-sourced sunscreen ingredients" mean that a product contains no unnatural, synthetic ingredients.  ¶12.[3]

Even assuming, arguendo, that it is proper to resolve Defendant's argument on a motion to dismiss, Defendant's argument that all reasonable consumers, as a matter of law, would understand that the "100% naturally sourced sunscreen ingredients" representation applies only to the sunscreen Products' *active* sunscreen ingredients (that directly "provide protection from the sun;" Def. Mem. at 12-13, 16) defies both grammar and logic.  Defendant's argument ignores the fact that the Products in their entirety – everything in the tube – *are* sunscreens, and that Defendant represented that the sunscreen Products consisted of "100% naturally sourced sunscreen ingredients."  Because the entire Product is a sunscreen, a consumer would have no reason to believe that Defendant's misrepresentation means only that the *active* "sunscreen

---

[3]  Although Plaintiff agrees with the general "reasonable consumer" standard articulated by the cases cited by Defendant (Def. Mem. at 12), Plaintiff notes that those cases arise under entirely different facts that have no relevance whatsoever to Plaintiff's claims here.  For example, in *Larobina v. Wells Fargo Bank . N.A.,* No. 10-cv-1279, 2912 WL 1032953, at \*8 (MRK) (D. Conn. March 27, 2012), the court simply found that a mortgage borrower could not reasonably have believed that there would be no interest penalty for late payment when "the mortgage agreement clearly states that 'interest will accrue on the entire Principle balance outstanding at any time' and that it will be charged every day."

ingredients" are "100% natural." At the very least, there is a factual question whether a reasonable consumer would understand Defendant's representation to mean that all of the ingredients in the sunscreen Products were "100% natural." ¶¶2, 11-12, 30 (alleging reasonable consumer's understanding). [4]

Indeed, Defendant clearly understands that the phrase "naturally sourced" communicates to reasonable sunscreen consumers that the *entire product* consists of "natural" ingredients. Defendant touts the sunscreen Products as being composed of "100% naturally sourced sunscreen ingredients," *and charges consumers more for them* than for comparable products that make no such claims. ¶¶3, 19-20. A reasonable consumer would not pay a premium for a purportedly natural product if he or she knew it actually included so-called "inactive" ingredients that are *not* natural and that, in fact, are linked to cancer (¶13, 18).[5]

---

[4] Defendant's reliance on *Red v. Kraft Foods, Inc.,* No. CV 10-1028-GW (AGRx), 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) (Def. Mem. at 13), is misplaced. In *Red,* plaintiff alleged that a label on a box of crackers that stated "made with real vegetables" was misleading because the crackers did not contain a "significant" enough amount of vegetable content. In rejecting plaintiff's claims, the court concluded that "a reasonable consumer will be familiar with the fact of life that a cracker is not composed of primarily fresh vegetables." *Id.* at *4. Unlike in *Red,* and as discussed above, a reasonable consumer could easily read Defendant's "100% naturally sourced" label as representing, pursuant to the rules of grammar, that the Products' ingredients are entirely natural.

[5] Nor does *Hairston v. S. Beach Bev. Co.,* No. 12-cv-01429-JFW (DTBx), 2012 WL 1893818 (C.D. Cal. May 18, 2012) (Def. Mem. at 14) support Defendant's argument as to how a reasonable consumer would understand Defendant's "100% naturally sourced" representation. In *Hairston,* the Defendant represented that the Lifewater drink was "all natural with vitamins." *Id.* at *5. Accordingly, the court concluded that "with vitamins" merely *modified* the "all natural" representation, and did not imply that the vitamins were themselves "all natural." *Id.* Here, as discussed above, Defendant's PDP does represent that the Products' entire formula is "natural." Moreover, to the extent that Defendant relies upon *Hairston* for the proposition that a reasonable consumer has an obligation to cross-check the representations on the front of a PDP with the nutrition label on the back, Defendant's argument is incorrect, as discussed below. Similarly, in *Bruton v. Gerber Prod. Co.,* No. 12-CV-024120LHK, 2013 WL 4833413 (N.D. Cal. Sept. 6, 2013) (Def. Mem. at 6), the court expressly recognized that a representation that a product is "natural" could be misleading to a reasonable consumer. *Id.* at *21. However, because the representation in *Bruton* was that the product was "made *with* 100% natural fruit" (emphasis

7

Defendant's argument that, as a matter of law, the ingredient list on the back of each Product somehow immunizes Defendant from its misrepresentations (*see* Def. Mem. at 14-15) is incorrect. First, simply listing ingredients without also disclosing that those ingredients are artificial does not in any way inform the consumer that the product includes synthetic ingredients. Even natural ingredients can have "scientific-sounding" names. A reasonable consumer cannot be expected to know whether ingredients are natural simply by reading their names (especially when the label specifically states that the product is "natural"). *See, e.g., Dreyer's Grand Ice Cream,* 2012 WL 2990766, at *7 (denying motion to dismiss; although glycerin ingredient listed on label, "nothing about the label disclosed that the glycerin" was produced through a synthetic process).[6]

Second, even if baldly listing the ingredients somehow alerted reasonable consumers that some of the ingredients in the "natural" Products were *not* natural (which it clearly does not here), courts in this Circuit have rejected Defendant's argument and held that the ingredient list

---

added), the court concluded that a reasonable consumer would understand that "natural fruit" was *one* ingredient in the food product, not the *only* ingredient. *Id.* By contrast, the label here does not just say the Products are made with one particular natural ingredient, but that the Products are "100% naturally sourced."

[6] Accordingly, Defendant's reliance on *Stokley-Van Camp, Inc. v. Coca-Cola Co.,* 646 F.Supp.2d 510 (S.D.N.Y. 2009) (Def. Mem. at 15) is without merit. First, *Stokley-Van Camp* is procedurally inapposite. It arose under the Lanham Act (rather than state consumer protection statutes), and involved the denial of a plaintiff's motion for a preliminary injunction, for which the plaintiff bore the burden of establishing a likelihood of success (as opposed to Defendant's motion to dismiss here, regarding which Plaintiff is entitled to every reasonable inference). Second, *Stokley-Van Camp* is distinguishable on the merits. The *Stokley-Van Camp* plaintiff alleged that the defendant's sports drink misrepresented that it was "complete" when, in fact, it was not a significant source of calcium, which plaintiff alleged would be highly relevant to athletes. *Id.* at 523. The court rejected this argument, noting that the nutrition label *specifically stated* that the drink was "not a significant source of … calcium," which any consumer would expressly understand simply by "reading the label." *Id.* at 532. Here, as discussed above, a reasonable consumer could not know simply by seeing that the sunscreen Products included ingredients with unfamiliar names that those ingredients were synthetic (as opposed to natural) chemicals.

on the back of a product label is *not* sufficient (at least as a matter of law on a motion to dismiss) to evade liability for misrepresentations on the front of the label. *Ackerman v. Coca-Cola Co.,* No. CV-09-0395(JG)(RML), 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010) ("The fact that the actual sugar content of Vitaminwater was accurately stated in an FDA-mandated label on the product does not eliminate the possibility that reasonable consumers may be misled" by statements concerning the healthfulness of the product on the front of the label); *Hughes v. Ester C. Co.,* 930 F.Supp.2d 439, 463-64 (E.D.N.Y. 2013) (quoting *Ackerman*).[7] The Court of Appeals for the Ninth Circuit has discussed the justification for this rule:

> We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. . . . We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Williams v. Gerber Prods. Co.,* 552 F.3d at 939-40; *see also Fagan,* 2014 WL 92255, at *2 (rejecting identical argument raised by Defendant's subsidiary); *Lam v. General Mills, Inc.,* 859 F. Supp. 2d 1097, 1104 (N.D. Cal. 2012) ("the Fruit Snacks' ingredients list cannot be used to correct the message that reasonable consumers may take from the rest of the packaging");

---

[7]   Contrary to Defendant's argument, *Fink v. Time Warner Cable,* 714 F.3d 739 (2d Cir. 2013) (Def. Mem. at 15) does not hold (or even imply) otherwise. In *Fink,* the Second Circuit first stated the unremarkable principle that context is important in evaluating whether a commercial representation is misleading, and that "under *certain* circumstances, the presence of a disclaimer or similar clarifying language *may* defeat a claim of deception." *Id.* at 742 (emphasis added). The Second Circuit then upheld the dismissal of plaintiff's claims given the specific (and, in the words of the Second Circuit, "perplexing") allegations in that case: as evidence of defendant's alleged misrepresentations, plaintiff offered only a single advertisement dated "nine months *after* [p]laintiffs filed suit" which "contained only *one* of the four misstatements alleged in the complaint," leaving the court to "wonder where to find the advertisement containing the other three misstatements" and thus to "easily conclude that Plaintiffs' claims lack the facial plausibility necessary to survive a motion to dismiss." *Id.* (emphasis in original). Plaintiff's claims here plainly are of a wholly different character.

9

*Dreyer's Grand Ice Cream,* 2012 WL 2990766, at *11 (defendant "cannot rely on the ingredient

list to correct any false or misleading statements on the front of its packaging"); *Von Koenig,* 713

F. Supp. 2d at 1079 (sustaining claim that "All Natural" label was misleading due to presence of

high fructose corn syrup notwithstanding disclosure on ingredient list).[8]

### B.    Defendant Engaged in Unfair Acts or Practices Under CUTPA

Plaintiff has also properly pled that Defendant's misrepresentations constituted "unfair"

conduct pursuant to the "cigarette rule," which entails an analysis of:

> (1) [W]hether the practice, without necessarily having been previously considered
> unlawful, offends public policy as it has been established by statutes, the common
> law, or otherwise—in other words, it is within at least the penumbra of some
> common law, statutory, or other established concept of unfairness; (2) whether it
> is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes
> substantial injury to consumers …

*Ventres v. Goodspeed Airport, LLC,* 275 Conn. 105, 155 (2005).  As Defendant acknowledges, a

practice can violate CUTPA because it violates all three prongs of the "cigarette rule" to a

---

[8]  Defendant's reliance on three final cases to support its argument that a reasonable consumer
would not be misled by Defendant's misrepresentations is misplaced.  In *Viggiano v. Hansen
Natural Corp.,* No. CV 12-10747 MMM (JCGx), 2013 WL 2005430 (C.D. Cal. 2013) (Def.
Mem. at 14), the court simply held that where a product label merely represented "all natural
flavors," and plaintiff had failed to identify any "artificial *flavors* in the drink" (emphasis in
original), reasonable consumers could be expected to check the ingredient list if they had any
question as to whether any synthetic *non-flavor* ingredients were present. *Id.* at *9 n.38.
Defendant also cites to two California cases (Def. Mem. at13-14) that disregard both the express
holding of *Williams* and the many cases (including those cited above) that have followed the
Ninth Circuit's directive.  Rather, both brief opinions rely almost exclusively on straw-man
arguments and hyperbole (and ignore the controlling (as to them) *Williams* precedent*). Pelayo v.
Nestle USA, Inc.,* No. CV 13-5213-JFW (AJWx), 2013 WL 5764644, at *4 (C.D. Cal. Oct. 25,
2013) ("the reasonable consumer is aware that Butoni Pastas are not springing fully-formed from
Ravioli trees and Tortellini bushes") (internal quotation marks omitted); *Balser v. Hain Celestial
Grp., Inc.,* No. CV-13-05604-R, 2013 WL 6673617, at *1 (C.D. Cal. Dec. 18, 2013) (citing
*Pelayo* and stating that "shampoos and lotions do not exist in nature, there are no shampoo
trees").  However, the issue is not whether a finished cosmetic product "grows on trees," but
whether Defendant has misrepresented that all of the *ingredients* in the Products are "natural"
through Defendant's "100% naturally sourced" representation.  Accordingly, neither decision
should be considered as persuasive authority in this Court.

limited extent *or* because it violates just one of the prongs to a greater extent.  *Id.; see* Def. Mem. at 17.  Here, Plaintiff has satisfied all three prongs of the "cigarette rule," and Defendant's arguments to the contrary are wholly without merit.

### 1.    Defendant's Misrepresentations Offend Public Policy

The first prong of the "cigarette rule" concerns whether the challenged practice violates public policy.  Here, Plaintiff specifically pleads that Defendant's conduct violates the statutory public policy set forth in the Food, Drug and Cosmetic Act ("FDCA") against cosmetic product labeling that is "false or misleading in any particular."  ¶32 (quoting 21 U.S.C.A. § 362).[9]  As discussed at length above, Plaintiff further pleads that Defendant violated that public policy by labeling its sunscreen Products as being a "100% naturally sourced" and providing "natural protection" when, as Defendant concedes (*see* Def. Mem. at 12-13), the Products in fact contain synthetic ingredients.  This blatant misrepresentation, on its own, is enough to state a claim under CUTPA.

Defendant does not dispute the existence of the FDCA policy cited above, or that violation of that policy would be sufficient to state a claim.  *See* Def. Mem. at 17-18.  Rather, Defendant simply repeats its argument that the "100% naturally sourced" representation is "not false and misleading."  *Id.* However, as discussed above (*see* Part III.A), this substantive argument is without merit.[10]

---

[9]   Defendant's conduct also violates the FDCA's prohibition against drug product labeling that is "false or misleading in any particular."  21 U.S.C. § 352.

[10]   Defendant's reliance on *Herskowitz v. Apple, Inc.,* Nos. 12-CV-0213-LHK, 12-CV-03124-LHK, 2013 WL 1615897 (N.D. Cal. Apr. 15, 2013) (Def. Mem. at 18) is misplaced.  In *Herskowitz,* the plaintiff alleged that defendant's contract for the sale of online music downloads was so one-sided as to be "unconscionable."  After rejecting plaintiff's substantive "unconscionability" argument (which has no bearing on the substance of Plaintiffs' claims here), the court naturally also dismissed plaintiff's entirely derivative state claim.  *Id.* at *12.  By

11

### 2. Defendant's Misrepresentations Are Immoral, Unethical, Oppressive or Unscrupulous

The second prong of the "cigarette rule" concerns whether Defendant's conduct is immoral, unethical, oppressive or unscrupulous.  Plaintiff specifically alleges that Defendant's misrepresentations violated this prong (*see* ¶33), and Defendant's misrepresentation that the Products are "Natural" when, as Defendant concedes, they are not, adequately supports Plaintiff's claim.  Accordingly, Defendant's argument that Plaintiff "pleads no facts to support" her claim of unethical and unscrupulous conduct (Def. Mem. at 18) is simply incorrect. Defendant's argument that its representations were not immoral or unscrupulous because "no reasonable consumer would be misled" (*id.*) is also incorrect; for the reasons discussed herein, Defendant's representation is false and misleading to a reasonable consumer.  Also, *Plaintiff* was misled, as she will testify at trial.  Moreover, Plaintiff has not yet had the opportunity to conduct discovery, which Plaintiff anticipates will demonstrate the extent to which Defendant knew that its misrepresentations would mislead the public.

### 3. Defendant's Misrepresentations Are Substantially Injurious to Consumers

The final prong of the "cigarette rule" addresses whether the alleged misconduct causes substantial injury to consumers.  Here, Plaintiff alleges that she and the members of the Class paid a $3 to nearly $6 premium for each Product over comparable products that are not marketed as consisting of natural ingredients (¶¶19-20, 34), and that the class suffered damages in excess of $5 million as a result (¶4).

In response, Defendant again erroneously argues that its labels were not misleading and that Plaintiffs and the putative class could not have been harmed by any misrepresentation due to

---

contrast, Plaintiffs here, as discussed above, *have* sufficiently pled an underlying (FDCA) violation to their CUTPA "public policy" claim.

the presence of an ingredient list.  Def. Mem. at 19-20.  As discussed above (*see* Part III.A), this argument is without merit.[11]

Incredibly, Defendant also argues that Plaintiffs have not adequately alleged that the injury caused by Defendant's misrepresentations outweighs the benefits of those misrepresentations.  Def. Mem. at 19-20.  Here, Plaintiffs allege that they were misled into purchasing (at a premium price) sunscreen Products (including sunscreens for use on babies) that were represented as being "100% naturally sourced" when in fact the Products contain synthetic, harmful ingredients.  ¶¶8-18.  There is no possible consumer, competitive or societal benefit from misleadingly and deceptively labeling products as "natural" when they are not.

Defendant makes the illogical (and, indeed, silly) argument that its "100% naturally sourced" misrepresentation somehow enhances consumers' ability "to make meaningful comparisons" among various sunscreens.  Def. Mem. at 20.  But if there actually is a difference between the Products and other sunscreens, then Defendant should have made those comparisons *without* using the false and misleading phrase "100% naturally sourced."  Defendant's use of that phrase does not give consumers any additional useful information if and when, as here, it is untrue.  Rather, using that phrase simply allows Defendant to charge a price premium even though the Products include synthetic – and harmful – ingredients.[12]

---

[11]  Defendant wrongly relies upon *Davis v. HSBC Bank Nev., N.A.,* 691 F.3d 1152 (9th Cir. 2012), for the proposition that any injury suffered by Plaintiffs here was "a result of [their] own failure" for failing to read and understand the ingredients list.  Def. Mem. at 19.  In *Davis,* the court held that a credit card advertisement was not misleading because the ad specifically stated that "other restrictions may apply," and, "[i]f that were not enough , the online application used boldface and oversized font to alert [plaintiff] to the Important Terms and Disclosure Statement" which listed the allegedly concealed fees.  *Id.*  at 1169.  Here, as discussed above, Defendant provided no disclosures to Plaintiffs that the ingredients on the ingredient list were in fact synthetic.

[12]  Defendant's argument that this litigation is comparable to *Herron v. Best Buy Co.,* 924 F. Supp. 2d 1161 (E.D. Cal. 2013) (Def. Mem. at 20) is baseless.  In *Herron,* the plaintiff alleged

13

**C.      Plaintiff's Claims are Not Preempted By FDA Regulations or Barred By the Doctrine of Primary Jurisdiction**

Defendant's arguments that Plaintiffs' claims are preempted by FDA regulations (Def. Mem. at 7-8) or barred by the doctrine of primary jurisdiction (Def. Mem. at 8-11) are without merit.  Indeed, Defendant's argument would lead to the absurd result that companies would be completely immune from liability for falsely representing the nature of the ingredients in their cosmetics products.

**1.      Plaintiff's State Law Consumer Protection Claims Are Not Preempted**

Defendant's argument that Plaintiff's claim is preempted because Plaintiff is attempting to use state law to impose additional disclosure requirements on Defendant (*see* Def. Mem. at 7-8) is without merit.  As the Supreme Court of the United States has observed, "[b]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action."  *Bates v. Dow Agrosciences LLC,* 544 U.S. 431, 449 (2005).[13]  Here, Plaintiff is simply seeking to enforce state consumer protection prohibitions against making *basic factual misrepresentations* which Defendant knowingly and voluntarily made on the Product labels (*i.e.,* that they are "100% naturally sourced").  Contrary to Defendant's argument (Def. Mem. at 6), Plaintiff does not seek to require Defendant to provide additional information not required by the FDA.  Rather, she simply asserts "consumer

that the defendant's representations concerning the battery-life rating of certain products was misleading because defendant failed to disclose that the rating was based on industry-standard benchmarks (rather than average real-world usage).  The court concluded that using industry-standard benchmarks was appropriate so that consumers could realistically compare battery-life ratings between products.  *Id.* at 1178.  Here, Defendant cites no industry standard to misleadingly label sunscreens as "natural."

[13] Defendant's reliance on *Bates* (Def. Mem. at 7) is perplexing.  In *Bates*, the court stated the unremarkable proposition that a federal law (such as the Federal Insecticide, Fungicide and Rodenticide Act at issue there) *can* preempt state law (including common law), but then, in light of the principle articulated above, reversed the lower court for applying pre-emption too broadly and remanded for further proceedings.

fraud claims based on statements that are alleged to be literally false, as a factual matter," which "have generally been found to be permissible under the FDCA" and thus not preempted by federal law or FDA regulation.  *Won Kyung Hwang v. Ohso Clean*, 2013 WL 1632697, at *14; *see also In re Epogen & Aranesp Offlabel Marketing & Sales Practices Litig.,* 590 F. Supp. 2d 1282, 1291-92 (C.D. Cal. 2008) (although direct claims that defendant promoted drug for off-label use in violation of federal law was preempted by FDCA and FDA regulation, separate state law consumer protection claims that, in furtherance of that scheme, defendant made misrepresentations "that are literally false [or] misleading" would not be preempted).

Plaintiff's state consumer protection claim is fully consistent with the FDCA, under which a cosmetic or drug is deemed misbranded "if its labeling is false or misleading in any particular."  21 U.S.C. §§ 362, 352.  A "state statute mirroring its federal counterpart does not impose any additional requirement merely by providing a damage remedy for conduct that would otherwise violate federal law."  *Ackerman,* 2010 WL 2925955, at *6.  Here, Plaintiff does not seek to use state law to require Defendant to say or do anything.  Rather, Plaintiff seeks only to hold Defendant responsible for the truthfulness of the statements it freely and voluntarily made. As the *Fagan* court recently recognized in rejecting a similar preemption argument raised by Defendant's subsidiary, "if defendants are liable under state law for misleading language contained in the products' principal display panels (PDP) as alleged in the [complaint], this liability would not impose any requirement on the listing or description of cosmetic ingredients that is different from or in addition to, or that is otherwise not identical with the labeling requirements imposed by FDA regulations. . . . [I]f the language in the PDPs is misleading, as the FAC alleges, then state law liability based on the product labels merely creates a damages remedy for violation of state law requirements that parallel, rather than add to, federal

requirements, and hence are not preempted. " *Fagan*, 2014 WL 92255, at *1 (citing *Riegel v. Medtronic*, 552 U.S. 312, 330 (2008); internal quotation marks omitted).

Indeed, numerous courts, including in this Circuit, have rejected Defendant's preemption argument. *See, e.g., Frito-Lay*, 2013 WL 4647512, at *9-10 (state law claim that defendant misrepresented that food product "natural" not preempted by FDA policy statement about use of "natural" on food labels). "Permitting a factual determination to go forward with respect to whether the challenged 'natural' labels in this case would deceive a reasonable consumer is not akin to defining FDA policy, but rather is a finding of fact with respect to this particular plaintiff and product, and would not risk undermining the agency's expertise in this area." *Ivie v. Kraft Foods Global, Inc.*, No. C-12-02554-RMW, 2013 WL 685372, at *13 (N.D. Cal. Feb. 25, 2013) (rejecting preemption argument and declining to dismiss state law UCL and CLRA claims that "natural" label was misleading); *Astiana v. Ben & Jerry's Homemade, Inc.,* Nos. C 10-4387 PJH, C 10-4937 PJH, 2011 WL 2111796, at *10 (N.D. Cal. May 26, 2011) (state law claim that product was not "natural" does not implicate, and not preempted by, federal law or regulation); *Lockwood v. Conagra Foods, Inc.,* 597 F. Supp. 2d 1028, 1031 (N.D. Cal. 2009) (same); *see also In re Epogen*, 590 F. Supp. 2d at 1292 ("To hold to the contrary would mean that the FDA, not courts, would be responsible for resolving all questions of whether a statement made in connection with [a regulated activity] was false, misleading or omitted a material fact. This Court would not extend the FDA's [] jurisdiction so far.").[14]

---

[14]  Defendant's reliance on the New Jersey district court's decision in *Crozier v. Johnson & Johnson Consumer Cos.,* 901 F. Supp. 2d 494 (D.N.J. 2012) is entirely misplaced.  In *Crozier,* the plaintiff alleged that the defendant's use of certain *trademarks* and *trade dress* on a product's label was misleading, and the court held that use of trademarks and dress (and what a reasonable consumer would infer from that trade dress) fell within the scope of FDA labeling regulations and so were preempted.  *Id.* at 503-05.  In other words, the court held that, because use of trademarks is expressly regulated by the FDA, any claim that a consumer might infer an incorrect fact from a defendant's (regulated) use of a trademark is also preempted.  However, the

2.      **Plaintiffs' State Law Consumer Protection Claims Are Not Barred By the Doctrine of Primary Jurisdiction**

Defendant's argument that Plaintiff's claims are barred by the primary jurisdiction doctrine (Def. Mem. at 8-11) is also without merit.  As an abrogation of the court's power to resolve disputes, the primary jurisdiction doctrine is narrowly applied.  "Dismissal on primary jurisdiction grounds does not speak to the jurisdictional power of the federal courts, but rather structures the proceedings as a matter of judicial discretion . . . ."  *Ackerman,* 2010 WL 2925955, at *13 (internal quotation marks and citation omitted).  As the Second Circuit has held, application of the primary jurisdiction doctrine is unwarranted "when the issue at stake is legal in nature and lies within the traditional realm of judicial competence."  *Goya Foods, Inc. v. Tropicana Products, Inc.,* 846 F.2d 848, 851 (2d Cir. 1988).  Moreover, "[w]here, as here, the doctrine is invoked at the motion to dismiss stage the question is whether the complaint plausibly implicates a claim that would *not* implicate the doctrine."  *Chavez v. Nestle USA, Inc.,* 511 Fed. Appx. 606, 607 (9th Cir. 2013) (citation omitted; emphasis in original).

Here, Plaintiff's claims are clearly outside the limited scope the primary jurisdiction doctrine.  First, Plaintiff's claims do *not* implicate matters within the FDA's purview or that require its expertise.  Rather, as discussed above, Plaintiff alleges a state consumer protection misrepresentation claim based upon a simple factual misrepresentation on the Products' labels.  This basic factual inquiry into the truthfulness of Defendant's "natural" representations does not require specialized analysis and is well within the purview of this Court.  As courts in this Circuit have noted, the question of whether labeling a product that contains synthetic ingredients as "natural" would "mislead a reasonable consumer is one courts are well-equipped to handle, and

---

*Crozier* plaintiffs did not allege (as Plaintiffs do here) that the label included affirmative false misrepresentations of fact (for example, about whether the Products' ingredients are all "natural") and the court did not address (much less hold) that such claims are preempted.

17

is not an appropriate basis for invoking the primary jurisdiction doctrine . . . . [T]his is not a technical area in which the FDA has greater technical expertise than the courts – every day courts decide whether conduct is misleading." *Ackerman,* 2010 WL 2925955, at *14 (internal quotation marks and citations omitted). "This case is far less about science than it is about whether a label is misleading, and the reasonable-consumer inquiry upon which some of the claims in this case depends is one to which courts are eminently well suited, even well versed." *Frito-Lay,* 2013 WL 4647512, at *8 (declining to apply primary jurisdiction doctrine to claim that food product mislabeled as "natural"). Courts in other jurisdictions have similarly limited the doctrine. *See, e.g., Won Kyung Hwang v. Ohso Clean*, 2013 WL 1632697, at *18 ("Such claims do not turn on determinations that require the expertise of the FDA as to what renders a statement misleading as incorrect factual statements are, by definition, false and misleading"); *Torres-Hernandez v. CVT Prepaid Solutions, Inc.,* No. 08-cv-1057-FLW, 2008 WL 5381227, at *4 (D.N.J. Dec. 17, 2008) (declining to dismiss case on primary jurisdiction grounds because "the case at bar [simply] requires this Court to determine whether Plaintiff and those similarly situated received what they bargained for").[15]

Second, contrary to Defendant's arguments, the FDA *has* had the "opportunity to address" the use of the "natural" label in the context of cosmetics, but expressly declined to do so. *See* ¶2 at n.1. As Defendant acknowledges, the FDA on March 7, 2013, confirmed that it has never interpreted "natural" with regard to cosmetic products and that doing so does not "fit

---

[15]  Defendant's citation to the Ninth Circuit's decision in *POM Wonderful LLC v. Coca-Cola Co.,* 679 F.3d 1170 (9th Cir. 2012) (Def. Mem. at 9) does not support its argument. The *POM* court specifically did *not* hold that state law consumer claims must be dismissed in deference to the FDA. Rather, the *POM* court held that deference to the FDA warranted dismissal of plaintiff's *federal* Lanham Act claims. *Id.* at 1177-78. The Ninth Circuit then remanded the state consumer law claims (which the district court had dismissed on other grounds not relevant here), and said that the district court, *inter alia,* would have to *consider* whether FDA preemption applied. As discussed above, courts have routinely held that it does not.

within [its] current health and safety priorities." *See* FDA Letter (attached to the Weinberger Declaration submitted with Defendant's Motion [Dkt. No. 30-2] as Exhibit I) at 3.[16]  Although the FDA Letter stated that the ingredient list "*might aid*" (emphasis added) a consumer "concerned about the source of a cosmetic product's ingredients," it did *not* state that the ingredient list was sufficient to overcome a misrepresentation on a product label.

Indeed, Defendant's argument that, although the FDA has specifically chosen *not* to offer any direction about use of the word "natural" with regard to cosmetic products, courts should nonetheless abstain from considering consumers' claims in this and related cases until the FDA *does* choose to act (Def. Mem. 10-11) is nonsensical.  Defendant essentially seeks a license to use the word "natural" on cosmetics labels in any manner it pleases, no matter how misleading it may be.[17]  Courts have routinely rejected this untenable argument.  *See Ackerman*, 2010 WL 2925955, at *14 (declining to abstain on primary jurisdiction grounds because "the FDA is aware of plaintiffs' concerns but lacks the resources to take enforcement action in every instance in which its policies are violated [and] deferral to the FDA is unlike to result in a timely resolution of plaintiff's claims"); *Chavez*, 511 Fed. Appx. at 607 (reversing trial court dismissal on primary jurisdiction grounds of state consumer law claims concerning food additive where "the FDA has shown virtually no interest" in regulating chemical at issue); *Parker*, 2013 WL 4516156, at *7 (declining to apply primary jurisdiction doctrine because "various parties have repeatedly asked

[16]  Defendant's reliance on the underlying decision in *Astiana v. Hain Celestial Grp., Inc.,* 905 F. Supp. 2d 1013 (N.D. Cal. 2012) (Def. Mem. at 9-10) is misplaced.  The FDA issued its *Astiana* letter declining to define "natural" *after* the *Astiana* court had reached its determination that court action could undercut the FDA's authority.  Accordingly, the *Astiana* court did not have the benefit of the FDA's express decision not to enter the field of defining "natural" for cosmetics.

[17]  For example, as Defendant acknowledges (Def. Mem. at 5-6), the FDA has defined "natural" in the context of food products "as meaning that nothing artificial or synthetic . . . has been included in, or has been added to, a food that would not normally be expected."  *See* 58 Fed. Reg. 2302-01, 2407 (Jan. 6, 1993).

the FDA to rule on 'natural' labeling, and the FDA has declined," and so "referring the matter to

the FDA would do little more than protract matters"); *Fagan*, 2014 WL 92255, at *1 (rejecting

primary jurisdiction argument because FDA has declined to act); *Janney v. Mills*,

No. C 12-3919 PJH, 2013 WL 1962360, at *7 (N.D. Cal. May 10, 2013) ("the court finds little

reason to stay or dismiss the case to allow the FDA to take action" because "in repeatedly

declining to promulgate regulations governing the use of "natural" as it applies [even] to food

products, the FDA has signaled a relative lack of interest [and so] any referral to the FDA would

likely prove futile"); *Lockwood*, 597 F. Supp. 2d at 1035 (declining to apply primary jurisdiction

doctrine because "various parties have repeatedly asked the FDA to adopt formal rulemaking to

define the word natural and the FDA has declined to do so because it is not a priority and the

FDA has limited resources").[18]

       Accordingly, Plaintiffs' claims are not barred under the doctrine of primary jurisdiction.

---

[18] The remaining cases cited by Defendant in which a court abstained from hearing a case pursuant to the primary jurisdiction doctrine are readily distinguishable.  In *Watkins v. Vital Pharm., Inc.,* No. CV 12-09374 SJO (JCx), 2013 WL 5972174 (C.D. Cal. Nov. 7, 2013) (Def. Mem. at 10), plaintiff alleged that the representation that a food product was "zero impact" was misleading.  However, the court expressed concern that "zero impact" implicated scientific questions outside the court's expertise.  *Id.* at *4 ("A term like 'zero calorie' is not intuitively the same as 'zero impact.'  Calories, sugar, and fat are specific nutritional elements, but 'impact' refers to the effect those elements have on the human body.")  Accordingly, the court deferred to the FDA to have the first opportunity to address the meaning of "zero impact."  *Id.*  By contrast, as discussed above, courts have routinely concluded that they are fully equipped to evaluate a representation that a product is "natural."  Similarly, the plaintiff in *Taradejna v. General Mills, Inc.,* 909 F.Supp.2d 1128 (D. Minn. Dec. 10, 2012) (Def. Mem. at 10-11) alleged that the defendant's yogurt product could not properly be labeled "Greek yogurt" because it contained Milk Protein Concentrate ("MPC").  *Id.* at 11 30.  The court concluded that the specialized question of whether "MPC is a proper, permitted ingredient in yogurt . . . falls squarely within the competence and expertise of the FDA" as "a matter requiring scientific and nutritional expertise."  *Id.* at 1134.  Again, these concerns regarding the need for heightened expertise are not implicated here.  The final case cited by Defendant – *Coyle v. Hornell Brewing Co.,* No. 08-02797(JBS), 2010 WL 2539036 (D.N.J. June 15, 2010) (Def. Mem. at 11) – not only is contrary to the vast majority of authority as cited above, but predates most of that authority.  Moreover, *Coyle* concerns a "natural" label on a *food* product.  The FDA has never disclaimed an intent to regulate the word "natural" in the food context as it has in the cosmetics context applicable here.

**IV.      CONCLUSION**

Defendant misrepresented that the sunscreen Products are "100% naturally sourced" and provide "natural protection" in order to convey a specific message to consumers nationwide: that the Products were free of synthetic ingredients.  Defendant then charged a premium based on that misrepresentation.  Accordingly, Plaintiffs respectfully request that the Court deny Defendant's Motion in its entirety.  In the event the Court grants the Motion, Plaintiffs respectfully request leave to amend to address any deficiencies identified by the Court.

Dated:  March 6, 2014                                        Respectfully submitted,

**IZARD NOBEL LLP**
MARK P. KINDALL
ROBERT A. IZARD
JEFFREY S. NOBEL
NICOLE A. VENO

By:        /s/ Mark. P. Kindall
           Mark P. Kindall (Bar No. Ct13797)

29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6190
mkindall@izardnobel.com
rizard@izardnobel.com
jnobel@izardnobel.com
nveno@izardnobel.com

Joseph J. DePalma
Katrina Carroll
**LITE DEPALMA GREENBERG, LLC**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com
kcarroll@litedepalma.com

[Additional signatures on following page]

21

Michael A. Laux
**LAW OFFICE OF MICHAEL A. LAUX**
8 Myrtle Avenue
Westport, CT 06880
Telephone: (203) 226-3392
Facsimile: (203) 222-8023
mlaux@lauxlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 6th day of March, 2014, the foregoing document was filed electronically through the CM/ECF system, which caused all parties to be served by electronic means.

/s/ Nicole A. Veno
Nicole A. Veno

ATTORNEY FOR PLAINTIFF

22