# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

HEIDI LANGAN, *on behalf of herself and*
*all others similarly situated*,
      Plaintiff,

     v.

JOHNSON & JOHNSON CONSUMER
COMPANIES, INC.,
      Defendant.

No. 3:13-cv-01470 (JAM)

## RULING DENYING DEFENDANT'S MOTION TO DISMISS

This case is about the use of the word "natural" on labels for sunscreen products.

Defendant Johnson & Johnson Consumer Companies Inc. makes and sells sunscreen products

under its well-known Aveeno brand name. Some of these products have prominent labels stating

that they provide "natural protection" and contain "100% naturally-sourced sunscreen

ingredients." Plaintiff Heidi Langan claims that these labels are misleading—that they led her

and other reasonable consumers to believe that *all* the ingredients in the sunscreen products were

natural, when in fact the products actually contain synthetic ingredients such as in the lubricating

skin lotion that is mixed in with ingredients that protect against exposure to the sun. In response,

defendant readily admits that its sunscreen products contain many unnatural ingredients, but it

nevertheless contends that the statements on its labels are literally true and not misleading

because the ingredients in the products that actively protect a user from the sun's rays are in fact

natural.

In this putative class action case, plaintiff contends that defendant's use of these

statements on the sunscreen product labels is deceptive and unfair in violation of the Connecticut

Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 52-110a *et. seq.*[1] Defendant has

moved to dismiss this claim pursuant to Fed. R. Civ. P. 12(b)(6). Defendant argues (1) that

plaintiff has failed to state a claim under CUTPA, and (2) that plaintiff's CUTPA claim is

preempted by the Food, Drug, and Cosmetic Act ("FDCA") or, in the alternative, is within the

primary jurisdiction of the Food and Drug Administration ("FDA"). Because I find that plaintiff

has alleged a viable CUTPA claim that is not preempted by federal law or barred by the primary

jurisdiction doctrine, I will deny the motion to dismiss.

## BACKGROUND

Plaintiff's second amended complaint (Doc. #29)—currently the operative complaint in

this litigation—alleges the following facts. Defendant manufactures and markets sunscreen

products under its Aveeno brand name. Three particular Aveeno sunscreens—Aveeno Baby

Brand Natural Protection Lotion Sunscreen, Aveeno Brand Natural Protection Lotion Sunscreen,

and Aveeno Baby Brand Natural Protection Face Stick—are at issue in this case. The front labels

of each of these three sunscreen products prominently feature the words "natural protection" and

"100% naturally-sourced sunscreen ingredients." These phrases "constitute representations to a

reasonable consumer that the Sunscreen Products contain only natural ingredients." Doc. #29, ¶

11.

Indeed, plaintiff herself went shopping, saw these Aveeno sunscreen products at the

store, reviewed the product labels, and purchased two containers based on her understanding that

the sunscreens contained *only* natural ingredients. Plaintiff and other consumers paid a premium

for these Aveeno sunscreens, which are more expensive than comparable sunscreens that do not

purport to be natural. The Aveeno sunscreen products, however, are not entirely natural. They

---

[1] Plaintiff also alleges that defendant's statements violate "materially identical" consumer protection statutes from 20 other jurisdictions.

2

"actually contain numerous unnatural, synthetic ingredients." *Ibid.*

DISCUSSION

The principles governing this Court's consideration of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) are well established. The Court must accept as true all factual matter alleged in a complaint and draw all reasonable inferences in a plaintiff's favor. *See Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 159 (2d Cir. 2014). But "'[t]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### *Adequacy of CUTPA Allegations*

CUTPA prohibits the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). CUTPA claims can be based on either an "actual deceptive practice" or an unfair practice—that is, a "practice amounting to a violation of public policy." *Ulbrich v. Groth*, 310 Conn. 375, 409, 78 A.3d 76 (2013) (internal quotation marks omitted). Here, plaintiff claims that defendant's practices are both deceptive and unfair.

An act or practice is actually deceptive under CUTPA when there is: (1) "a representation, omission, or other practice likely to mislead consumers"; (2) the consumer "interpret[s] the message reasonably under the circumstances"; and (3) "the misleading representation, omission, or practice [is] material—that is, likely to affect consumer decisions or conduct." *Smithfield Assocs., LLC v. Tolland Bank*, 86 Conn. App. 14, 28, 860 A.2d 738 (2004) (internal quotation marks omitted).

To determine whether an act or practice is unfair under CUTPA, Connecticut courts look

3

to the following factors:

> (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons].

*Ulbrich*, 310 Conn. at 409 (alterations in original) (internal quotation marks omitted). "It is well settled that whether a defendant's acts constitute . . . deceptive or unfair trade practices under CUTPA . . . is a question of fact for the trier . . . ." *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 228, 990 A.2d 326 (2010) (internal quotation marks omitted).

Plaintiff claims that defendant's use of the phrases "natural protection" and "100% naturally-sourced sunscreen ingredients" on its sunscreen product labels is actually deceptive because these phrases lead reasonable consumers to believe that the sunscreens contain only natural ingredients when the products actually contain numerous unnatural ingredients. Defendant disagrees, and argues that these statements merely convey the "unambiguous and truthful message . . . that the ingredients that provide protection from the sun are naturally-sourced." Doc. #30-1 at 18. Defendant further argues that any ambiguity in the meaning of these phrases is dispelled by the detailed ingredient list found elsewhere on the product packaging. *Id.* at 19.

Whether the phrases on defendant's sunscreen packaging are deceptive is a question of fact that is not readily susceptible to resolution on a motion to dismiss. "Defendant's argument that the representations are literally true because the term '100%' only applies to the ingredients in the products that provide protection from the sun (and not to other ingredients in the lotions that serve other purposes) rests on one possible interpretation of the language, but it is not the only possible interpretation." *Fagan v. Neutrogena Corp.*, 2014 WL 92255, at *2 (C.D. Cal.

2014). Indeed, it seems perfectly reasonable to me that a typical consumer might interpret the phrase "100% naturally-sourced sunscreen ingredients" on a sunscreen product label to mean that the whole product was natural. After all, the entire product—everything in the container—is applied by a consumer as a sunscreen, and it seems unlikely that a reasonable consumer would distinguish between the active "sunscreen ingredients" and the "non-sunscreen ingredients" inside a container. I have little difficulty rejecting defendant's argument that these phrases should be deemed not deceptive as a matter of law. *See Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *7 (N.D. Cal. 2012) (denying motion to dismiss because "it is [not] implausible under *Twombly* and *Iqbal* that a reasonable consumer might . . . understand the term" "'All Natural Flavors' to mean 'all natural ingredients'").

Nor can I conclude as a matter of law that the product ingredient list found on the back of the products clarifies whether the sunscreens contain natural ingredients. To begin with, it is not clear to me that merely listing the names of the various product ingredients—without specifying whether those ingredients are natural or unnatural—elucidates whether the sunscreen contains natural ingredients. Defendant contends that a reasonable consumer would recognize that certain ingredients in the sunscreens, such as "hydroxyethyl acrylate/sodium acryloyldimethyl taurate copolymer," are "obvious[ly] synethetic." Doc. #34 at 9. It may be that a jury ultimately accepts this argument, but I decline to decree that certain ingredients would be understood by a reasonable consumer to be unnatural. After all, a quick Google search indicates that even an ordinary blueberry contains quite scary sounding ingredients like "isoleucine," "phenylalanine," and "phytosterols," as well as flavors with names like "ethyl ethanoate, 3-methyl butyraldehyde, 2-methyl butyraldehyde, pentanal, [and] methylbutyrate." *See* "What It Would Look Like if Your Banana Came With an Ingredient List," *available at*

http://www.businessinsider.com/ingredient-list-for-natural-products-2014-1 (last accessed March 30, 2015). Would a reasonable consumer be expected to know that these ingredients are obviously natural?

Moreover, although there is apparently no Connecticut law directly on point, I do not think that Connecticut courts would hold that a defendant can automatically immunize itself from CUTPA liability by "rely[ing] on the ingredient list [on the back of its packaging] to correct any false or misleading statements on the front of its packaging." *See Astiana*, 2012 WL 2990776, at *11; *see also Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *16 (E.D.N.Y. 2010) (noting that "the presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by the vitaminwater's labeling and marketing"). As the Ninth Circuit has stated when discussing the reasonable consumer standard under a California consumer protection law:

> We [do not think] that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939–40 (9th Cir. 2008). In sum, plaintiff has alleged a plausible claim that defendant's statements on the sunscreen products are deceptive in violation of CUTPA.

I also find that plaintiff has sufficiently pleaded a claim that defendant's statements are unfair in violation of CUTPA. First, plaintiff plausibly alleges that defendant's statements offend an established public policy: the FDCA's prohibition on sunscreen "labeling [that] is false or

misleading in any particular." *See* 21 U.S.C. § 362(a) (prohibiting such labeling in cosmetics); 21 U.S.C. § 352(a) (prohibiting such labeling in the drug context). Second, a jury that finds that the statements on the product labeling are misleading could also find that defendant's practice of including these prominent statements is unethical, immoral, or unscrupulous, particularly given the fact that the natural sunscreen ingredients in the products are only a small amount—about 7% to 15%—of the total contents in each container. Third, there are sufficient allegations in the complaint to indicate that these statements are substantially injurious to customers. Plaintiff alleges that she and other members of the putative class paid a premium—ranging from $3 to almost $6—for each product over comparable products that are not marketed as consisting of natural ingredients. While this financial harm is rather small for each individual consumer, plaintiff alleges that the cumulative injury to class members is in excess of $5 million. If the allegations in the complaint are proven, a reasonable fact finder could conclude that defendant's statements on the sunscreen labels are unfair within the meaning of CUTPA.

### *Preemption*

Defendant contends that plaintiff's state consumer protection claims in this lawsuit are expressly preempted by the FDCA. It is well established that "Congress has the power to preempt state law[s]" by "enacting a statute containing an express preemption provision."[2] *Arizona v. United States*, 132 S. Ct. 2492, 2500–01 (2012). But a federal statute will not be found to preempt claims arising under state law unless Congress' intent to do so is "'clear and manifest.'" *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). This presumption against preemption applies with particular force where Congress legislates "'in a field which the States have traditionally occupied'"—that is, a field

---

[2] There are several other types of preemption, *see, e.g.*, *Arizona v. United States*, 132 S. Ct. 2492, 2500–01 (2012) (discussing express preemption, field preemption, and conflict preemption), but here defendant has raised only an express preemption challenge.

within "'the historic police powers of the States.'" *Ibid.* (quoting *Lohr*, 518 U.S. at 485). The advertising and labeling of consumer products is a field traditionally subject to state regulation. *See Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008).

The FDCA provides in relevant part that states may not create "any requirement . . . that is different from or in addition to, or that is otherwise not identical with, a requirement [imposed under federal law relating to over-the-counter drugs such as sunscreens]." 21 U.S.C. § 379r(a)(2). But the FDCA further provides that states are free to enforce "a requirement that is identical to a requirement" under federal law. *Id.* § 379r(f). A state, therefore, is free to "provid[e] a damage remedy for conduct that would otherwise violate federal law." *Ackerman*, 2010 WL 2925955, at *6.

Plaintiff's claims in this case are premised on the theory that defendant's sunscreen labels are false and misleading. According to defendant, "Plaintiff seeks to impose a requirement that is different from the labeling requirements promulgated by the FDCA." Doc. #30 at 2. I am not persuaded. The FDCA itself prohibits "labeling [that] is false or misleading." 21 U.S.C. § 362(a). "[P]laintiff's claims, if proved, 'would simply require Defendant to truthfully state [whether the sunscreen ingredients are 100% naturally sourced] or not sell its products; such relief would not impose a state requirement that is different from or in addition to, or that is otherwise not identical with that of the FDCA.'" *Fagan*, 2014 WL 92255, at *1 (alteration in original) (quoting *Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1189–90 (C.D. Cal. 2011)); *see also Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 473–76 (S.D.N.Y. 2014) (FDCA did not preempt deceptive-act-and-practices claim under New York law alleging misleading labeling of "Active Naturals" on Aveeno personal care products). Because plaintiff's CUTPA claims target conduct that is already prohibited under federal law and does not conflict

8

with federal law, the claims are not preempted.

### *Primary Jurisdiction*

Finally, defendant argues that plaintiff's claims are barred by the doctrine of primary jurisdiction. This doctrine seeks to "promot[e] proper relationships between the courts and administrative agencies charged with particular regulatory duties," and it applies when "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81 (2d Cir. 2006) (internal quotation marks omitted). While there is "[n]o fixed formula" for deciding when to invoke the doctrine, courts generally examine whether the case involves "technical or policy considerations within the agency's particular field of expertise," and "whether the question at issue is particularly within the agency's discretion" (among other factors). *Id.* at 82–83 (internal quotation marks omitted). The Second Circuit has cautioned that the doctrine has a "relatively narrow scope," and does not apply when the claim involves matters within the "traditional realm of judicial competence." *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988). When the doctrine does apply, a court will either stay the case or dismiss it without prejudice. *See Johnson v. Nyack Hosp.*, 86 F.3d 8, 11 (2d Cir. 1996).

The primary jurisdiction doctrine does not apply in this case. It is true that the FDA has special competence to determine as a factual matter whether particular ingredients are or are not "natural," and that the FDA has the authority to regulate the use of the word "natural" in the labeling of sunscreens. But here the parties agree that the Aveeno sunscreen products at issue contain certain natural ingredients and certain unnatural ingredients. The only dispute is whether the use of the terms "natural protection" and "100% naturally-sourced sunscreen ingredients"

conveys the deceptive message that the whole sunscreen product is natural (as plaintiff claims),

or whether these terms convey the truthful and non-deceptive message that only those

ingredients that actively protect a user from the sun's rays are natural (as defendant contends).

"[T]his is not a technical area in which the FDA has greater expertise than the courts—every day

courts decide whether conduct is misleading." *Ackerman*, 2010 WL 2925955, at *14 (internal

quotation marks omitted). Ultimately, "'[t]his case is far less about science than it is about

whether a label is misleading,' and the reasonable-consumer inquiry upon which . . . the claims

in this case depend[ ] is one to which courts are eminently well suited, even well versed.'" *In re*

*Frito-Lay N. Am., Inc. All Natural Litig.*, 2013 WL 4647512, at *8 (E.D.N.Y. 2013) (quoting

*Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 898 (N.D. Cal. 2012)).[3]

       Moreover, application of the primary jurisdiction doctrine is particularly inappropriate

where, as here, the relevant administrative agency has shown no interest in addressing the matter.

In 2013, the FDA admitted that "proceedings to define 'natural' [in the context of cosmetic

product ingredients] do not fit within [its] current health and safety priorities." Doc. #30-11 at 3.

The FDA is, of course, entitled to make this choice. It is a busy agency that "lacks the resources

to take enforcement action in every instance in which its policies are violated." *Ackerman*, 2010

WL 2925955, at *14. But the FDA's refusal to act in this field does not mean that courts should

indefinitely refrain from hearing claims that sunscreen manufacturers and sellers are making

deceptive and misleading statements in violation of state law. Invoking the primary jurisdiction

---

[3] Defendant relies heavily on *Astiana v. Hain Celestial Grp., Inc.*, 905 F. Supp. 2d 1013 (N.D. Cal. 2012), a decision from the Northern District of California that is currently on appeal to the Ninth Circuit. The *Hain Celestial* court applied the primary jurisdiction doctrine because "mak[ing] any independent determination of whether defendants' use of 'natural' [on cosmetic product labels] was false and or misleading" would "risk undercutting the FDA's expert judgments and authority." *Id.* at 1016 (internal quotation marks omitted). This decision relies on the reasoning of the Ninth Circuit's opinion in *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012), a decision that has since been unanimously reversed by the Supreme Court, *see POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014). *See also Goldemberg*, 8 F. Supp. 3d at 478 (noting that FDA declined "to determine the meaning of 'natural'" following the *Hain Celestial* decision and therefore that "resort to the agency at this time would be unavailing"). I decline to follow the *Hain Celestial* decision.

doctrine under these circumstances "would do little more than protract matters." *See Parker v. J.M. Smucker Co.*, 2013 WL 4516156, at *7 (N.D. Cal. 2013); *see also Goldemberg*, 8 F. Supp. 3d at 477–78 (declining to apply primary jurisdiction doctrine to claim involving use of term "Active Naturals" on Aveeno products in light of evidence that FDA does not wish to determine the meaning of "natural"); *Fagan*, 2014 WL 92255, at *1 (holding that nearly identical claims were not barred by the doctrine of primary jurisdiction based on the FDA's guidance that it had no intention of defining the term "natural" in the cosmetics context); *Ackerman*, 2010 WL 2925955, at *14 (declining to apply primary jurisdiction doctrine because "deferral to the FDA is unlikely to result in a timely resolution of plaintiffs' claims").

## CONCLUSION

For the reasons set forth above, I find that plaintiff has a pled a plausible CUTPA claim that is not preempted by federal law or barred by the primary jurisdiction doctrine. Therefore, defendant's motion to dismiss (Doc. #30) is DENIED.

It is so ordered.

Dated at Bridgeport this 31st day of March 2015.

*/s/ Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge